May it please the court, counsel. My name is John Checkett. I'm here with my partner, Paul Shuston, and we represent the estate of Zachary Pithen and also Zach's parents. I'm going to reserve three minutes of time. I will watch my time. This case is about the standard for summary judgment as it applies in in a police deadly force case. On April 20th, 2013, four Phoenix police officers entered into Zach Pithen's apartment and within a minute, or maybe even less than a minute, they shot and killed Zach. The only surviving witnesses are Phoenix police officers and Zach can't testify. There are no independent witnesses. This case is controlled by this court's opinions in Longoria, the state of Lopez v. Gelhaus, Cruz v. City of Anaheim, and Gonzales v. City of Anaheim. Unfortunately, the district court below did not follow any of those cases or the basic standard for summary judgment. It ignored the numerous genuine issues of material fact as well as the evidence when viewed in a light most favorable to the plaintiff that Zach had nothing in his hand, much less a 16 inch wooden spindle. At the time, Officer Brooklyn shot and killed Zach. This district court chose to accept the inconsistent self-serving account of the shooting officer, who is the only officer out of four officers to see Zach wielding a 16 inch and 27 inch spindle, which I submit to this court is of conspicuous size. Could I direct you to one of the issues that you raise as creating a genuine issue of material fact was an argument that there was an inconsistency in the testimony of Brookens. But when I put side by side the shooting investigation report, the police investigation report, and Brookens' deposition testimony, I couldn't see where there was a material inconsistency. So can you point me to what you think the inconsistency was? All three of those sources say there was a first time that Piffin picked up a spindle and that Brookens then delivered an E-strike. And then all three of them say there was a second time he picked up the spindle, and at that point is when Brookens shot him. So what's the inconsistency? In Judge Okuda, as far as... Did you just say all three of them saw him pick up a spindle? I said each of the reports, the shooting investigation report, the police investigation report, and Brookens' deposition testimony say there was a first time that he picked up the spindle, and then Brookens used a E-strike. And then there was a second time that he picked up the spindle, and that was when he fired his pistol, service gun. And Judge Okuda, what I do is refer you, first off, to footnote nine in the defendant's response. The inconsistency that we're pointing out is, at the time Officer Brookens is interviewed, hours after this occurs, he basically says that Zach, with a 16 inch spindle in his hand, reared back and he shot Zach. The inconsistency we're pointing out is that later, three years later at his deposition, this is the inconsistency we're referring to as further corroboration, is that Zach took that 16 inch spindle up once, down, up twice. So there's more detail. So what you're referring to is when he says, he kind of goes forward a little bit and then I slip off, and he starts to go upward again towards Williams. Is that what you're saying? Yes. That additional detail about how he struck with the spindle is the material inconsistency that creates a genuine issue of material fact. I just wanna make sure that that is, that specific language is what you're focusing on. Yes. And if you look specifically... That's not inconsistent, right? It's just additional detail. That's what I was confused about. Well, at the summary judgment standard, where all the facts are viewed in the light most favorable to the plaintiff here, the non moving party, look at footnote nine of the defendant's response and what they call that... An ER number for that? What's that? An excerpt of record number for that? Yes, Your Honor, it's in their response brief footnote number. That's not an ER number. I'm asking, do you have an excerpt of record number? We can find it, but we can find it on the spot if you give us a number. If you don't have a number, that's fine, but you're telling us to look... This is the second time you told us to look at footnote nine. It's kind of hard for us to do right now unless there's a more specific reference. So I'm just asking if there's a more specific reference. If you don't have it, that's fine. Go on. And Judge Clifton... When you say response, I think the problem is you mean their opposition brief to this court, correct? Yes. Yes. In their opposition brief at footnote nine, they basically say that Officer Brooklyn's statement regarding raising the 16 inch stick twice is a supplement of his prior statement to the police officer. Well, right. The prior statement isn't a direct quote. It's reports that were made by the police after interviewing him. And so what they indicate is that on the second event is he picked up a stick and reared back towards him with the stick in his hand. And then in the deposition testimony, he gives more... Where he's speaking directly, he gives additional detail. He picked that up, he goes upward, he kind of goes forward a little bit, and then I slip off, and then he starts to go upward again. But I don't understand why that's a helpful inconsistency. There is no inconsistency, it's just got more detail. The bottom line is the second event is he grabbed the stick and he reared upward with it, and Brooklyn's thought he was going to hit Williams in the face. So I'm confused about how this creates... Taking the facts in the light most favorably to your client, how does this create a genuine issue of material fact about excessive force? Well, and Judge Aikuda, however you view it, is fine, but the issue is this. There are more issues of genuine material fact in the record outside of... If the defense wants to characterize that as a supplement and they admit it's supplement, meaning he fills it in more three years later than he did at the time that these events occurred, then I still think that's a genuine issue of material fact where a jury gets to decide. Why is it that the difference between a police, the shooting investigation report and the police investigation report of their interview with Mr. Brooklyn saying that Python moved upward with a stick in his hand in a way that seems threatening to Officer Williams, and the later deposition saying, well, he went up once and then he slipped off, I slipped off, and then he went up again. How does that allow a jury to determine that excessive force was used? Well, it allows a jury... The jury gets to evaluate the credibility of the officer, which... So you think that goes to credibility that the more detail in the deposition is something a reasonable jury could decide that Mr. Brookens wasn't credible? I wanna make sure I'm understanding your argument. Absolutely. And if there's any... If we point out any inconsistency or differences from his statements to the investigators at the time this occurred, and the defense calls it a supplement, a jury then gets to allow... Is allowed to assess the credibility of whether that's a supplement or a supplement. What else is there? Okay. And Judge Clifton, basically, you have all other officers present in the room with Officer Brookens did not feel deadly force against Zach was justified. Well, I'm not sure that's quite true. They didn't say that deadly force, the use of deadly force was not justified. They said that what they observed didn't cause them to reach that conclusion for themselves. They were always very careful to say that doesn't mean that it wasn't justified by what we didn't see. And so I think the first statement you gave me there was too broad. Try to refine that and tell me what the inconsistency is that could cause a jury to decide that Officer Brookens' testimony shouldn't be believed. Okay. Well, at the summary judgment stage where we are, if there are four officers in the room, three of them said, I don't believe deadly force was justified, and I was looking over here, I was looking over here, I was looking over here, and I didn't see anything. I don't see anything, I don't know anything. I think a jury is allowed, number one, we get to draw a reasonable inference from that, in the light most favorable to us, that they necessarily could have seen, given the photographs, given the positioning of everybody in the room, that they could have seen that. Don't you need it to be the case that we would expect at least one of them to have seen it? The inconsistency only exists if the situation was such that we would expect at least one of the other officers to see the spindle. Correct, but the reasonable inference you can draw is that there are four officers in the immediate presence, hands on Zach. A reasonable inference that we could draw, in the light most favorable to us, is they could have seen it if it was there. And so a reasonable jury could find that because they didn't see it or didn't perceive the deadly force threat, that it didn't exist. So the district court rejected your expert's testimony, saying it was conclusory, it wasn't based on facts, it was just based on the complaint, and you didn't object, I guess, to the district court, you didn't raise that on appeal. And so can we consider the expert evidence or is that now waived? Absolutely. Judge Acuda, I think the district court specifically focused on Mr. Clark, Roger Clark's testimony. Well, he mentions Ms. Blash and others as well. Well, he mentions it, but... And he says it's conclusory, it's not based on facts, it's just following the amended complaint. Well, if you look at the record, if you look at the physical evidence in the case, which we have in front of you, and in cases like this, where the only rebuttal witness is dead, you have the physical evidence of the disparity in the injuries, the severity of the injuries, as well as the timing of how long this took, and as well as the location in the room. And so based upon that, a reasonable jury could find, a reasonable jury was severely beaten in less than a minute by four officers who forced him into a corner of the room where he did not have the ability to... I'm sorry, I'm confused to how this is answering Judge Acuda's question. So it seemed to me that in the red brief, your opponent's brief to our court in footnote 14 on page 19 of their brief, they argued and pointed out that the district court had excluded all of your experts. And I didn't see anything in your reply brief that contested that or said anything about it, and I didn't see anything in your opening brief that had a different take on what had happened with the experts. So I'm also struggling with whether we can consider anything about your experts as a procedural matter. It sounds like you're talking about substantive facts or something and maybe what they said, but not procedurally what the posture is at this point of the experts. And Judge Freeland, there was no order here or any ruling by the lower court to say that the experts were excluded. So why didn't you say that in your reply brief when your opponent said they've been excluded? Well, we didn't say anything in our reply brief because at the summary judgment stage, the district court can't weigh the credibility of the experts at that time. So you could have said that in your opening brief that the district court seems to have been... It seems to have thought it could exclude our experts or something about this, but I just didn't see you dealing with this problem that it appears the district court excluded your experts. And Judge Freeland, even if you take that as true, you still have all the physical evidence, you still have the fact that the other officers in the room don't see this exact... That may be. You may not need your experts. So maybe your answer is you don't need your experts. But procedurally, it seems like I haven't yet figured out how we could be using your experts for anything to help you. And I'll submit to you that we don't even need the experts with the physical evidence, if that's how you view it. Without any further questions, I'll reserve the remaining two minutes. Alright. Good morning, Your Honors. My name is Justin Ackerman and I represent Officer Brookins, and with me at council table is Ms. Tina Eretz, who represents the City of Phoenix. I think the court has already hit on some of the major issues in this case, but I'd like to back up the factual analysis just a tiny bit. My opposing counsel presents this case as it starts at officers enter through a door at Mr. Pithen's apartment, and that's not why they were there, and it doesn't explain why they were there. And the reason why they're there is, I think, very important, in addition to the things that were just discussed, in terms of the degree of force used in this matter. The reasons officers were called to this apartment complex was because Mr. Pithen, undisputedly, was threatening its residents with some form of a bat or a spindle. He threatened a mother who was pushing her child later at night. Regardless of what reports had been made to 911, you're not arguing that if he hadn't picked up a spindle in the interaction with the police, that they could shoot him anyway, are you? No, the picking up of the spindle is the justification for the... And I think you argued in your brief, I think you kind of conceded in your brief, really, the only question here is whether he picked up a spindle, so I'm not really sure why you're backing up. The relevance is, if Officer Brookins' testimony is being questioned, and perhaps I shouldn't go there just yet, but if the court thinks in any way that there is some sort of dispute about Officer Brookins' testimony, then it can examine the entire record to look at what evidence supports his account of the circumstances giving rise to his use of force. And certainly, Mr. Pithen's aggressive behavior earlier in the evening, which led to their call, and what they were told just before they entered the room, which was that so and so, Mr. Pithen had threatened apartment residents, and they were going into a room where they thought the door was kicked in, they thought it was, in essence, a home invasion. It is all relevant to corroborate Officer Brookins' account of the situation. And I'll go straight to that particular account. I completely disagree, and I think the court has recognized there is no contradiction in Officer Brookins' testimony. His elaborate reference to Officer Brookins providing additional information about raising, whether he raised it once or twice, or if it was in mid motion, it merely supplements and further explains that he was trying to strike Officer Williams with the spindle. And quite frankly, if you look closely, I think, at the police reports and the officer investigation reports, which are, as this court's properly noted, summaries of what Officer Brookins actually told them, and not direct testimony, it never says he only once raised it, it just references that he raised it. So I find no material contradiction there in any way whatsoever. And I don't think there is one. In addition... Let me put to you the part that I've worked over several times, and that is, and the question for us is, could a reasonable jury, based on the evidence that's been submitted so far, conclude that the shooting was not justified? And that translates into conclude that Zach Pythian did not pick up the spindle and threaten the other officer, since that's the justification for the shooting. And it is hard because of the four officers who are present and still surviving and able to testify, the only officer who testifies about picking up the spindle is the one who did the shooting. So the question becomes, for me, could the jury have concluded that one of the other officers must have been in a position to spot it, and the fact that they didn't spot Pythian picking up the spindle is a inconsistency that causes them to disbelieve Officer Brookins' statement. Why couldn't a reasonable  jury have concluded? Because every one of the other officers in the room testified explicitly that they did not have the viewpoint or the vantage point to see what Officer Brookins saw. The record is undisputed. I'll point the court to SER. And that's true. Yes. We've got four people in a small room. Could a jury decide that's just not possible? Your Honor, Plaintiff's Counsel points a lot to the summary judgment standard. It was his burden to present some modicum of evidence that a jury could latch onto to contradict what Officer Brookins has testified to. Well, and what... He's pointed to two things. One, you briefly discussed the alleged inconsistency in the story. But the second, which for me is more important, is, is it really possible that none of the other officers could have spotted that if it happened, or couldn't have spotted the spindle falling out of his hand when he was shot, or anything else? And I know the officer said, well, I didn't see it, I was looking the other way. But the jury's entitled to believe what it decides happened. And would... If a jury came back with a verdict in favor of plaintiff, would the district court have been justified in setting that aside, saying a reasonable jury could not reach that verdict? I absolutely believe so, in light of all of the evidence in the case. I'll put aside the officer's testimony. I think that's clear there that they didn't see it. But you need to also look at the fact that, as I just alluded to earlier, the dangerousness and the prior behavior by Mr. Pithen supports Officer Brookins' account. In addition, the evidence that was submitted, the photographic evidence, also shows that there was a bloody spindle right next to him in the crime scene photos. I hadn't noticed the bloody part. Bloody? Yes, there's... There's blood on it. Maybe the photo, I don't think, jumped out with blood, but... And what part of the story would explain blood on a spindle? I don't understand that. Perhaps that was an over characterization, Your Honor. It was... There's spindles right next to him. The blood, frankly, doesn't matter. But there's no part of this story that involves blood. That would almost contradict the story, wouldn't it? He didn't stab anyone with the spindle under any account of this incident. No, but there was a very rough fighting, and I don't know if there was a cut that may have led to blood being on the spindle as he grabbed it. And certainly, the medical evidence shows that there was cuts on Mr. Brookin... Mr. Pithen. Did the plaintiff submit any evidence that it would not be possible for the three officers to miss the fact that Pithen had a spindle in his hand if he had it under those circumstances, or do they rely solely on a race ipsiloquitur theory? That's been my impression of the record the entire way through. It's just because there was three guys in the room, someone had to see it. And they started out their argument by saying the time frame from when they entered the room to when the shots were fired, they gave it a minute. I believe the testimony in the record is closer to 30 seconds, but a minute or 30 seconds under the rapidly evolving, highly fluid circumstance of Mr. Pithen putting his hands up and trying to fight the officers and them struggling in the small room. There's no reason why Officer Brookin's account would in any way be contradicted. It wouldn't be fully accepted by a jury in light of those facts. How is this different from a state of Lopez where one officer didn't hear the siren chirp and the other who shot claimed that there was a siren chirp and that created a genuine issue of material fact? Well, you have two officers saying the exact same thing, and I think that's the big difference, is that you have one officer who's completely uncontradicted, you have two officers testifying that's contradicting each other. Well, I'm not sure I understand. So in Lopez, one officer says there was a siren chirp and the other one says, I didn't hear it. How is that not very similar to what we have here? Well, you don't have... In this case, I think the perspectives of the officers are critical. And in the Lopez case, both of them had the perspective to hear or not hear a chirp. In this case, you only have one officer who has the perspective to see the spindle being used, and that's Officer Brookin. So that's what I believe is the major distinction on that particular fact. And when you have two officers contradicting each other, I think that clearly creates a big distinction between the two. What hasn't been addressed in addition to that is one of the other gram elements, we've been focusing very much on the threat of safety. Another gram element considers the crimes that have been violated as well. I'm gonna jump roughshod over that. But we're back to the problem that you've already acknowledged, that if he didn't pick up the spindle, they can't shoot him. Correct, Your Honor. So I just am not sure how the other factors really play in. Well, they do because he had already violated several Arizona crimes when at the time police were called there by threatening other neighbors, which is an assault. Even before you even get to the interior of the apartment, there's already... Except that he committed other crimes, if he doesn't pick up the spindle, there's not a justification for the shooting. So the other crimes... I can understand the argument that says the look, the fact that he threatened others with spindles might have suggested it's more likely factually here. That's not a gram factor consideration, that's the factual plausibility or implausibility of the story. I think we all come down to the same core question. Was there a basis upon which the jury had to conclude that the victim did, in fact, threaten the other officer with the spindle? If that fact isn't concluded by the jury, this case becomes pretty easy. But that's the hard one. Well, at the end of the day, Your Honor, you have sworn testimony in front of you that's uncontradicted. It is uncontradicted from Officer Brookins that Mr. Pitham picked up the spindle. It is their burden at summary judgment to say otherwise, and I understand the heightened burden in this particular circumstance where you have one officer saying, what happened? But at the end of the day, it's still their burden to show that that in some way is uncontradicted or is contradicted, and it's not. Or that there's reason to be suspicious of it. That seems to be our case law. And so their suggestion that the reason to be suspicious of it, or one of the reasons is because of the other officers being right there and not seeing the spindle. Again, when other officers have clearly testified on the record that no one was in a position to actually see what Officer Brookins saw, and it's uncontradicted, I don't think... Was there anything to cast out on their credibility in their testimony? None that I'm aware of, Your Honor. And if you look at their police reports, at least from Officer Williams, and I'm remembering offhand, he very consistently testified exactly how he testified at his deposition, which again, supports Officer Brookins' account of the situation. Very quickly, unless there's any additional questions, I wanna touch on the 14th Amendment argument. The 14th Amendment Familial Association argument, plaintiff has also raised on appeal, and they've only raised the two arguments, the Fourth Amendment and the 14th. They haven't raised any arguments regarding any of the state law claims that were at issue below. As plaintiffs have admitted, the officers had a 30 minute... 30 seconds to a minute to decide whether or not to use force in this highly revolving struggle. Under that particular circumstance, the only time a use of force violates the 14th Amendment in terms of familial association is if there was some sort of purpose to harm, or if the reasons given were unrelated to legitimate law enforcement means. Here, it kind of dovetails to the excessive force argument. There was clearly a legitimate reason why Officer Brookins used force here, and it was in defense of his fellow officer. And one point I'd like to elaborate that's coming to mind right now is if the court is looking at the totality of the circumstances here, Officer Brookins used force in a very close context with his other fellow officers. The only reason I think a juror could attribute why he would use force in that circumstance was when it was close to other officers is because the risk of potentially harming another officer through his use of force was less than the risk that Mr. Piffin posed Officer Williams. In other words, officers generally do not discharge their firearms in close context to another officer unless it is truly an emergency. And I think that lends credence to Officer Brookins' account of the entire situation. It lends credence to the fact that he used force to protect his fellow officer, which again, completely entitles him to summary judgment on plaintiff's 14th Amendment familial association claim. Plaintiffs have pointed in the record to some of his Facebook posts. I'll adjust that very quickly. I think the trial court properly disregarded them. They were made three years before this incident, none of them involved in any way, any reference to Mr. Piffin. They were largely related to hunting or of that matter, and I think they have absolutely no relevance, and they're highly prejudicial, and they were properly rejected by the trial court in any way for its analysis of the 14th Amendment familial association claim. Unless the court has any further questions. Yes, I'll ask one. Your brief cited I guess it's the medical examiner's report, and grasping at straws to try to find clarification, and I guess one of plaintiff's experts offered a conclusory statement. I couldn't ultimately draw an inference from the path taken by the bullet to support or discredit Officer Brooken's testimony. I finally shrugged and said, that doesn't move me either way. Is there anything further that would help me figure out if in fact the medical examiner's report does provide some corroboration? I would point you to SER 513, which is defendant's expert's report who's walking through the medical examiner's report, and in that, he points to the fact that the medical examiner's report notes that the bullet trajectories went through the right side of the chest and through the other side, which is consistent with Officer Brooken's testimony as to the positioning of Pittman and what he was attempting to do. That's where I would point the court. Thank you. Your Honor, what I refer you to is 2ER212. So within 30 seconds of... Assume 30 seconds of getting into the room, ER212, 2ER212 shows injuries of this significance. That's a question of fact as to whether a reasonable inference that Zack couldn't do anything by the time Officer Brooken said that he raised a 16 inch stick. The other part, Judge Ikuda, that you were keying on was, where is the evidence that the officers would have seen this? We painstakingly put the deposition demonstrations in the briefs, specifically to show you that Officer Williams was in a position to see a 16 inch close, under Officer Brooken's statement, if it was there. That's why those pictures are in there. A jury can draw a reasonable inference in our favor, especially in our favor, and a reasonable jury could find it wasn't there. In addition, a 27 inch spindle, a 27 inch spindle is over two feet. And so you're telling me that these other officers in the 27 inch spindle being waved at the officers, and then they miss a 16 inch spindle? Either everybody got together at the end, which a reasonable jury could say, and said, I didn't see anything, I don't know anything, or those spindles never existed, and the only person who saw them was Officer Brooken's. Officer Brooken's. And then you also have the diagrams at 2ER173, 2ER175, and Brooken's diagram at 2ER177. From the basic positioning of these diagrams, you can see there's an inconsistency between the two officers. This is no different than Longoria, where you have multiple officers looking at the same person, and one officer who shot claims a shooter's stance and the other officers don't. That is a reasonable... That's a genuine issue of material fact, and for those reasons, we'd ask you to overturn the district court's ruling, remand this, and reinstate the claims. Thank you. Thank you. We thank both parties for their argument. The case of Cleo Daly and Tracy Pithen versus City of Phoenix and Clinton Brooken's is submitted.
judges: Clifton, Ikuta, Friedland